|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |

| | | |
|---|---|---|
| **TOMMIE LEE MCDOWELL JR.,** ) | | 3:09-cv-00315-LRH-VPC |
| Plaintiff, ) | | |
| v. ) | | **REPORT AND RECOMMENDATION** |
| **RICHARD RIMINGTON**, ) | | **OF U.S. MAGISTRATE JUDGE** |
| Defendants. ) | | February 8, 2011 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendant's motion for summary judgment (#75).[1] Plaintiff opposed (#80) and defendant replied (#83). The court has thoroughly reviewed the record and recommends that defendant's motion for summary judgment (#75) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Tommie Lee McDowell ("plaintiff") is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#14, p. 1). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, claiming violation of his First, Eighth, and Fourteenth Amendment rights. *Id*. at 4-5. Plaintiff's remaining claim after screening (#13) alleges that defendant Remington fondled plaintiff's genitals through the food slot in his cell, following an unclothed body search. *Id.* at 4.

The court now relates the facts pertinent to the alleged assault. Plaintiff and defendant agree that plaintiff was incarcerated at ESP and assigned to Unit 5 on January 12, 2009 (#75, p. 4; #80, p. 3). Likewise, the parties agree that defendant Rimington, senior correctional officer ("SCO") Irvin, and correctional officer ("CO") Green were all working in Unit 5 on January 12, 2009. *Id.* Beyond these basic facts, the parties disagree about the events that occurred on that date.

---

[1] Refers to the court's docket numbers.

1    Plaintiff states that he was asked via intercom if he would like to see his caseworker (#14,
2    p. 4). He replied that he would like to see her and then prepared himself to leave. *Id.* CO Green
3    approached plaintiff's cell and ordered him to participate in a partial unclothed body search. *Id.*
4    Plaintiff complied with the order and after the search began to redress for the visit. *Id.* CO Green
5    informed him that he should remain in only his boxers for the visit. *Id.* Plaintiff objected and CO
6    Green left to discuss the matter with SCO Irvin. *Id.* Plaintiff spoke to SCO Irvin via intercom and
7    claims that SCO Irvin agreed with him and told him he could see his caseworker fully clothed. *Id.*
8    at 4-5. Plaintiff dressed and again prepared to leave the cell. *Id.* at 5. Defendant Rimington
9    approached plaintiff's cell and requested a full unclothed body search prior to the visit to the
10   caseworker. *Id.* Plaintiff complied and as defendant Rimington handed plaintiff his clothes through
11   the food slot, he fondled plaintiff's penis. *Id.* Plaintiff refused to see his caseworker and sent several
12   grievances and kites regarding the alleged molestation. *Id.* at 5-6.

13   Defendant Rimington claims that he approached plaintiff's cell to ask if he would like to see
14   his caseworker (#75, p. 3; #75-1, p. 2). Plaintiff stated that he would like to visit her. *Id.* Defendant
15   Rimington told plaintiff he needed to complete a partial unclothed body search prior to visiting the
16   caseworker and opened the food slot, anticipating that plaintiff would pass his clothes through the
17   slot for defendant's inspection. *Id.* Plaintiff refused the search so defendant closed the food slot,
18   motioned to SCO Irvin who was sitting in the control booth that plaintiff did not want to see his
19   caseworker, and moved on to speak with other inmates (#75, p. 3; #75-1, p. 2-3). Plaintiff called
20   SCO Irvin over the intercom and again requested to see his caseworker (#75, p. 3; #75-1, p. 3). SCO
21   Irvin told defendant Rimington that plaintiff wanted to see his caseworker, but defendant explained
22   that plaintiff refused to comply with the partial search. *Id.* SCO Irvin instructed CO Green and
23   defendant Rimington to return to plaintiff's cell, and to allow him to see his caseworker if he
24   complied with a full unclothed body search. *Id.* CO Green and defendant Rimington returned to
25   plaintiff's cell, ordered the search, and plaintiff refused. *Id.* Plaintiff and SCO Irvin spoke via
26   intercom and SCO Irvin explained the search was required if plaintiff wanted to see his caseworker
27   (#75, p. 3-4; #75-1, p. 4). Plaintiff again refused and CO Green and defendant Rimington left his
28   cell door. *Id.*

1    Defendant's motion requests that the court grant summary judgment on plaintiff's Eighth
2 Amendment claim (#75).  Defendant acknowledges that the parties' versions of the sequence of
3 events leading up to the alleged fondling differ.  *Id.* at 2.  However, defendant notes that it is
4 uncontested that SCO Irvin and CO Green were present in the unit during the events.  *Id.* at 7.
5 Defendant argues that the sworn statements of these two officers, along with defendant Rimington's
6 sworn statement, prove that defendant Remington "could not have touched or fondled Plaintiff's
7 penis as Plaintiff never submitted to the unclothed body search and, therefore, there was never any
8 opportunity to touch Plaintiff's penis." *Id.* at 4, 7.  Defendant believes that reliance on the statements
9 of the two officers, whom the parties agree were present, avoids a "swearing contest" between
10 plaintiff and defendant, which would necessitate consideration of their credibility.  *Id.* at 7.  In fact,
11 defendant argues that "[s]hort of completely dismissing and discarding these two sworn statements
12 and finding that SCO Irvin and CO Green have misrepresented the facts in their sworn statements,
13 there are no disputed issues of material fact worthy of trial" (#83, p. 3).

14    As noted above, defendant Rimington's statement comports with the sequence of events
15 described by defendant (#75-1, p. 2-6).  CO Green's statement notes that he only recalls interacting
16 with plaintiff once on January 12, 2009, while accompanied by defendant Rimington.  *Id.* at 8.  CO
17 Green does not recall being at plaintiff's cell door alone at any point that day.  *Id.* at 9.  He also states
18 that he remembers plaintiff refusing to comply with the unclothed body search.  *Id.*  CO Green
19 claims he never saw defendant Rimington put his hand into the food slot in plaintiff's cell, and he
20 does not believe the food slot was opened at any point.  *Id.* at 9.  CO Green opines further that had
21 he left plaintiff's cell door to discuss plaintiff with SCO Irvin, he would have returned to resolve the
22 issue and would have seen defendant Rimington conducting an unclothed body search of plaintiff.
23 *Id.* at 9-10.

24    SCO Irvin's statement explains, in detail, the process of conducting an unclothed body
25 search.  *Id.* at 12.  SCO Irvin states that on January 12, 2009, he was assigned to the control room
26 for the unit, from which he can see the entire unit.  *Id.* at 13.  He recalls seeing defendant Rimington
27 standing at plaintiff's door, but does not recall seeing plaintiff pass clothing through the food slot
28 to defendant Rimington.  *Id.*  Nor does SCO Irvin remember defendant Rimington putting his hand

into plaintiff's food slot. *Id.* In fact, SCO Irvin comments that he does not recall any of the events described by plaintiff and that from his position in the control room he "can see the entire unit and if CO Green and CO Rimington each conducted a search, [he] would have noticed it." *Id.* at 14.

Defendant also argues that plaintiff's version of the facts "does not make sense." *Id.* at 8. Specifically, defendant claims that "Plaintiff fails to explain . . . why CO Green never returned to Plaintiff's cell to escort Plaintiff to the Caseworker's office." *Id.* at 9. Defendant also questions why, in plaintiff's version of the facts, he was not willing to see his caseworker in his underwear, but agreed to a second unclothed body search (#83, p. 5). Finally, defendant believes the results of the Inspector General's ("IG's") report and the grievances filed by plaintiff regarding the alleged fondling support their version of the facts and contradict plaintiff's story. *Id.* at 4. The IG's report reveals that plaintiff spoke to several health care providers about the alleged assault; however, the investigator ultimately recommended that the allegation be classified as "not sustained" because the investigation did not provide evidence of the assault (#76-1, p. 7 (*sealed*)).

Plaintiff believes there is an "irreconcilable contradiction" upon "comparison of the defendant's statements to previous grievance investigators . . . to [defendant's] November 15, 2010 sworn declarations" (#80, p. 8). Specifically, plaintiff focuses on the statement made in the second level grievance response, which says that plaintiff failed to follow a direct order to remove his underclothes. *Id.* at 6. Plaintiff believes this statement contradicts the sworn statements of defendant Rimington, CO Green, and SCO Irvin, which all state that plaintiff never submitted to any sort of search and reveals that defendant Rimington "was in fact engaged in the very process of having [plaintiff] undergo an unclothed search of my person; and it reveals he was present long enough to have violated the plaintiff as declared." *Id.* at 14. Plaintiff also notes that defendant Rimington said that he took ten to fifteen minutes after being at plaintiff's cell alone to notify SCO Irvin and CO Green that plaintiff purportedly refused to cooperate with a search. *Id.* at 14-15. Plaintiff believes that the fact that defendant Rimington had to notify SCO Irvin and CO Green of plaintiff's refusal "reasonably suggests that neither SC/O Irvin or CO Green had a clue the Defendant was at [plaintiff's] door some 'ten to fifteen minutes' earlier alone." *Id.* at 15. Plaintiff also compares CO Green's and defendant Rimington's sworn statements noting that it appears that the two officers were

4

1  not constantly in each other's presence and that CO Green is unaware of the events that took place
2  while defendant Rimington was alone at plaintiff's cell. *Id.* at 15-17.

3      The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the
4  plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the
5  benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.
6  1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.    Discussion**

    **1.    Summary Judgment Standard**

10      Summary judgment allows courts to avoid unnecessary trials where no material factual
11  disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).
12  The court grants summary judgment if no genuine issues of material fact remain in dispute and the
13  moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view
14  all evidence and any inferences arising from the evidence in the light most favorable to the
15  nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme
16  Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

20  *Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material
21  facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*,
22  477 U.S. 242, 251 (1986).

23      The moving party bears the burden of informing the court of the basis for its motion, and
24  submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex*
25  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party
26  opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth
27  specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule
28  56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party

1 who fails to make a showing sufficient to establish the existence of an element essential to that
2 party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-
3 23.

**B.     Analysis**

Plaintiff brings suit against defendant Rimington, claiming violation of the Eighth Amendment due to defendant Rimington's alleged fondling of plaintiff's penis through the food slot in plaintiff's cell (#14, p. 4-5). Defendant claims that summary judgment should be granted in his favor because his own sworn statement, and the statements of two other officers present on the day of the incident, all prove that plaintiff's version of the facts cannot be true (#75, p. 4, 7). Plaintiff argues that there are irreconcilable differences between the statements made by defendant Rimington in grievance responses and defendant's motion to dismiss that cast doubt as to the sequence of events that the defendant describes (#80, p. 8). Further, plaintiff believes the sworn statements of the other officers on duty illustrate that they did not accompany defendant Rimington at all times on January 12, 2009, thereby leaving him free to molest plaintiff. *Id.* at 14-17.

**1.     Cruel and Unusual Punishment - Inmate Sexual Assault**

Sexual abuse in prison is viewed through the Eighth Amendment's ban on cruel and unusual punishment. "Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). In terms of excessive force, the Supreme Court has held that when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," regardless of whether a prisoner suffered significant physical injury. *Hudson*, 503 U.S. at 9. The only requirement is that the prison official's actions be "'offensive to human dignity.'" *Schwenk,* 204 F.3d at 1196 (quoting *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991)). "A sexual assault on an inmate by a guard . . . is deeply 'offensive to human dignity.'" *Id.* at 1197. Further, where a prison official, rather than another inmate, is "responsible for the rape and sexual abuse of inmates, qualified immunity offers *no* shield." *Id.* (holding that a guard's conduct violated the Eighth Amendment, and that a reasonable officer would have thought it was a violation

1 of the Constitution to "enter the cell of a prisoner (transsexual or otherwise), unzip his pants, expose
2 himself, demand oral sex, and then, after being refused, grab the prisoner, push her up against the
3 bars of the cell, and grind his naked penis into her buttocks").

4 By contrast, "the Eighth Amendment's protections do not necessarily extend to mere verbal
5 sexual harassment." *Austin v. Terhune,* 367 F.3d 1167, 1172 (9th Cir. 2004) (finding that a prison
6 guard's act of exposing himself to an inmate from an elevated glass-enclosed control booth was not
7 sufficiently serious to violate the Eighth Amendment because the guard never physically touched the
8 inmate and because the incident was isolated and lasted only 30-40 seconds). Moreover, not "every
9 malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9.
10 Rather, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily
11 excludes from constitutional recognition *de minimis* uses of physical force." *Id.* at 9-10; *see also*
12 *Berryhill v. Schriro,* 137 F.3d 1073 (8th Cir. 1998) (holding that not all "unwelcome touches
13 amount[ ] to unnecessary and wanton infliction of pain," and that prison maintenance employees'
14 conduct of briefly touching an inmate's buttocks, unaccompanied by any sexual comments or banter,
15 was not sexual assault required to support the inmate's Eighth Amendment claim, as the touching
16 lasted only seconds, and the inmate believed the employees were trying to embarrass him, not rape
17 him); *Fisher v. Dizon,* 2008 WL 619149 (E.D. Cal March 4, 2008) (a guard's act of poking an
18 inmate twice in the buttocks was *de minimis* and was not an act of cruel and unusual punishment).

19 Here, the central issue is not the severity, duration, or frequency of the sexual contact
20 between plaintiff and defendant, nor are the damages caused to plaintiff by the alleged assault the
21 subject of defendant's motion to dismiss. Rather, parties disagree about whether the assault occurred
22 at all. The court spent considerable time and energy deciphering the two versions of events and
23 evaluating the sworn statements provided by defendant and contained within plaintiff's complaint.
24 While there are copious facts regarding the order of the alleged body searches, the officers present
25 at each search, and plaintiff's response to the requests for the searches, what seems most crucial is
26 that the parties agree that at some point on January 12, 2009, defendant Rimington stood at the door
27 of plaintiff's cell, alone.

28 According to defendant Rimington, he approached plaintiff's cell to ask if he would like to

1  see his caseworker. Plaintiff responded that he would; therefore, defendant Rimington ordered him
2  to participate in a partial unclothed body search. In anticipation of plaintiff's compliance, defendant
3  opened the food slot. According to plaintiff, defendant Rimington approached his cell to order him
4  to participate in a full unclothed body search following an initial search by CO Green. After the
5  search, plaintiff claims defendant fondled plaintiff's penis through the open food slot. Regardless
6  of which story about the facts leading up to defendant Rimington standing at plaintiff's cell alone
7  is accurate, the fact is that defendant Rimington and plaintiff shared some amount of time together
8  during which it seems that they are the only two people who can be positive about the events that
9  transpired.

10        Defendant argues that SCO Irvin and CO Green were present in the unit at all times on
11  January 12, 2009, and that they would have known if defendant Rimington conducted a search of
12  or fondled plaintiff. However, the sworn statements of these two individuals do not wholly support
13  this conclusion. SCO Irvin recalls seeing defendant Rimington standing at plaintiff's cell, but does
14  not remember seeing plaintiff and defendant exchanging anything through the food slot. He states
15  that given his position in the control room he would have seen these events had they occurred.
16  Notably, he did not say definitively that the events did not happen, just that he believes they could
17  not have happened under his watch. The fact that SCO Irvin believes he would have seen the alleged
18  assault had it occurred does not convince the court that the molestation did not occur. Presumably,
19  SCO Irvin was responsible for watching the entire unit so he very likely glanced away for a moment,
20  if not several minutes, during the interaction between defendant and plaintiff. CO Green's statement
21  largely concerns the details of events that occurred while he and defendant Rimington stood together
22  at plaintiff's cell door. Plaintiff does not accuse defendant Rimington of molesting him in front of
23  CO Green so these facts are not relevant or persuasive. Additionally, defendant suggests that the
24  court would have to dismiss or discredit the sworn statements he attaches as exhibits in order to
25  believe plaintiff's version of the facts and deny summary judgment. The court notes that it would
26  similarly have to dismiss or discredit plaintiff's complaint to grant summary judgment for defendant.
27        Defendant also argues that plaintiff's story does not make sense because plaintiff did not
28  account for CO Green's whereabouts and would not have participated in a full unclothed body search

after refusing to see his caseworker in his underwear. The court is not persuaded that the assault did not occur based on these assertions. Whether or not plaintiff kept track of CO Green's location or why plaintiff agreed to participate in a full search, while protesting a visit to his caseworker in his boxers, does not bear on whether defendant Rimington molested plaintiff. Rather, these arguments attack plaintiff's credibility by suggesting that if he misrepresented other portions of the events, then he must also be lying about the alleged assault. The court acknowledges that there are instances in which people fabricate stories about sexual assault. It is the sincere hope of the court, for the benefit of the litigants in this action and the countless victims who face skepticism due to publicity of such false accusations, that plaintiff is not using the highly charged nature of a sexual assault claim to attract the attention of the NDOC and this court. However, the court declines to assume that this is the case based on the evidence presented in the briefing and exhibits.

Finally, defendant offers the outcome of the IG's investigation into the alleged offense. The results of the investigation do not include much detail regarding the evaluation of the claims made by plaintiff. The report includes several notes describing conversations plaintiff had with various mental health providers about the alleged assault and its effect on his emotional well-being. The final page of the report simply concludes that there is not evidence to support plaintiff's claim. The court is unable to rely on this report to settled the disputed issues of material fact in this case as it does not offer additional, conclusive information. The fact that the IG's office arrived at the conclusion that there was not enough evidence to support plaintiff's claims does not bind this court.

At this point in the litigation, the court believes there remain open, important questions regarding the alleged molestation. Specifically, it is disputed that the opportunity for the assault existed. This is clearly a central factual issue that cannot be resolved based on the record before the court today. Therefore, summary judgment is inappropriate at this point and the court recommends that defendant's motion for summary judgment be denied.

The court takes a moment to comment on the submission of a summary judgment motion that, within the first three pages, acknowledges several, central disputed issues of material fact. As the parties know, the court spends considerable time responding to motions for summary judgment as they can be quite detailed, evidence rich, and can result in termination of a case. Generally

9

1 speaking, when a party files a motion for summary judgment it accepts the facts as presented by the
2 nonmoving party as true or relies on the parties' undisputed facts.  The movant then goes on to
3 suggest that notwithstanding these facts, the nonmoving party's claim fails as a matter of law.  Here,
4 the defendant presented differing versions of the facts and then proceeded to argue the factual
5 disputes.  Were the court to rule on these facts and arguments, it would require the court to determine
6 the credibility of the parties and the two other officers for whom the defendant offered statements.
7 This is clearly not the court's function at the summary judgment stage, as such factual disputes are
8 best left to a jury or bench trial.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendant's motion for summary judgment should be **DENIED** because there are outstanding, disputed issues of material fact.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's motion for summary judgment should be **DENIED**.

**DATED**: February 8, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**